Matthew T. Christensen
ANGSTMAN JOHNSON
3649 N. Lakeharbor Lane
Boise, Idaho  83703
Telephone: (208) 384-8588
Facsimile:  (208) 853-0117
Email: mtc@angstman.com
Christensen ISB: 7213

Attorney for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JEANNE B. BRYANT, solely in her capacity as court-appointed Independent Fiduciary for RETIREMENT SECURITY PLAN AND TRUST,<br><br>Plaintiff,<br><br>vs.<br><br>MATRIX TRUST COMPANY, LLC (f/k/a MG TRUST COMPANY, LLC), a Colorado limited liability company.<br><br>Defendant. | Case No.<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL |

The Plaintiff, Jeanne B. Bryant, solely in her capacity as court-appointed Independent Fiduciary for Retirement Security Plan and Trust, by and through her counsel of record, ANGSTMAN JOHNSON, and for causes of action against Matrix Trust Company, LLC (f/k/a MG Trust Company, LLC), states as follows:

COMPLAINT AND DEMAND FOR JURY TRIAL – PAGE 1
A◆J; Matter: 8571-013

## PARTIES, JURISDICTION, AND VENUE

1.      The Plaintiff, Jeanne B. Bryant ("Bryant"), is the current court-appointed Independent Fiduciary for Retirement Security Plan and Trust ("RSPT"). Ms. Bryant is a citizen of Tennessee.

2.      RSPT is a trust comprised of a collection of retirement plans, organized and under Bryant's fiduciary authority. Some of the RSPT plans are subject to the Employee Retirement Income Security Act ("ERISA"); others are not.

3.      Defendant Matrix Trust Company, LLC (f/k/a MG Trust Company, LLC – "MG Trust") is a Colorado limited liability company, with its principal place of business located in Colorado, licensed to do business in Idaho.

4.      The value of the claims at issue is in excess of $75,000.00.

5.      This court has jurisdiction pursuant to 29 U.S.C. §1132(e)(1) and 28 USC §1331. The court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

6.      Alternatively, this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the sum or value of $75,000.00 and is between a foreign company incorporated in Colorado with its principal place of business in Colorado (MG Trust) and a retirement plan fiduciary located in Tennessee (Bryant).

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. §1132(e)(2) because the events or omissions giving rise to the claims occurred in this judicial district.

## FACTUAL BACKGROUND

8. The Pension and Liquidity Plan and Trust was founded as of January 1, 2003 and later changed its name to the Retirement Security Plan and Trust ("RSPT"). Matthew D. Hutcheson ("Hutcheson") was originally the named trustee of RSPT. Beginning in 2004, Hutcheson Walker Advisors, LLC ("HWA") was held out as the RSPT sponsor and administrator.

9. RSPT is governed by a Plan Document, originally signed by Hutcheson and HWA on January 1, 2006. A true and correct copy of the Plan Document is attached hereto as ***Exhibit A.***

10. RSPT's purpose was to allow participating employers (and their employees – the "Participants") to make contributions towards the Participants' retirement accounts and otherwise protect their retirement investments. RSPT grants Participants the right and authority to direct the investment of their RSPT accounts.

11. At all relevant times, Interlake Capital Management, LLC ("Interlake") was RSPT's investment fiduciary/investment advisor. Kevin Price ("Price") owns 93% of Interlake and is effectively its only employee. Interlake and Price developed five specific investment portfolios that RSPT offered to the Participants.

12. At all relevant times, Green Valley Holdings, LLC ("GVH") was an Idaho limited liability company that was organized on August 5, 2010, with Hutcheson listed as the manager, member or authorized person. Hutcheson effectively owned or controlled GVH.

13. At all relevant times, ASPire Financial Services ("ASPire") served as RSPT's third-party administrator. ASPire provided certain services related to the recordkeeping and/or administration of RSPT.

14. At all relevant times, MG Trust served as RSPT's asset custodian and was responsible for maintaining RSPT funds and assets.

15. MG Trust was aware of, and had reviewed, RSPT's Plan Document and the other documents relevant to RSPT's administration and operation.

16. MG Trust contracted with HWA (as "Customer") and Hutcheson (as "Trustee") to provide the custodial services to RSPT via a Custodial Account Agreement.  A true and correct copy of MG Trust's Custodial Account Agreement (the "MG Trust Agreement") is attached hereto as ***Exhibit B***.

17. The MG Trust Agreement provides, among other things, that MG Trust shall "purchase or sell only securities that comply with [MG Trust's] and/or its affiliate's policies and procedures relating to acceptable securities, and that comply with all applicable rules, regulations, customs and uses of any exchange, market, clearinghouse or self-regulatory organization and applicable state and federal laws and regulations."

18. The MG Trust Agreement provides that if RSPT permits Participants to direct how their RSPT accounts will be invested, then MG Trust will establish separate participant-directed subaccounts and all references to "Customer" in the MG Trust Agreement shall be deemed to be references to the Participant.

19. MG Trust actually established subaccounts for all RSPT participants to implement the above-described provision.

20. The MG Trust Agreement further provides that MG Trust would "hold only those categories of assets mutually agreed to between the Customer and [MG Trust]."

21. In the event the Customer desired MG Trust to hold an asset not on the previously-approved list, the MG Trust Agreement required MG Trust's consent.

22. In some cases, the MG Trust Agreement required MG Trust to determine the fair market value of RSPT assets.

23. At all relevant times, MG Trust had some amount of discretionary authority or control regarding management of RSPT assets.

24. At all relevant times, MG Trust exercised some degree of authority or control over the management and disposition of RSPT plan assets.

25. As of November 2010, RSPT held participant accounts in trust, with assets totaling approximately $22,230,788.00. The RSPT assets consisted of:

| Category | Value |
|---|---|
| Employer Securities: | $14,932,641.00 |
| Loans to Participants: | $ 466,689.00 |
| Mutual Funds: | $6,831,458.00 |
| Cash: | $ 0.00 |
| **Total:** | **$22,230,788.00** |

26. In late December 2010, Hutcheson instructed Price at Interlake to transfer funds out of RSPT's trust assets held by MG Trust to purchase a promissory note held by Pacific Continental Bank (the "PCB Note"). Hutcheson did not disclose to Price that the PCB Note was secured by a golf course at Tamarack Resort located in Donnelly, Idaho.

27. Price refused Hutcheson's request, indicating that Interlake would not condone RSPT's purchase of outside illiquid notes. Hutcheson did not speak to Interlake again about transferring assets out of RSPT. Price assumed, as RSPT's investment manager, that the PCB Note had not been purchased by RSPT.

28.  On December 21, 2010, without Price's or Interlake's knowledge, Hutcheson emailed ASPire and instructed ASPire to make a request to MG Trust to transfer RSPT assets at MG Trust to an account controlled by Hutcheson.  No Participant agreed to this request.

29.  Following this instruction, ASPire forwarded Hutcheson's direction to MG Trust, which then implemented a $275,000.00 redemption of RSPT's account with the Vanguard Prime Money Market fund on December 23, 2010, and wired the funds to the requested outside account without question or investigation.

30.  Also on December 23, 2010, Hutcheson further instructed ASPire to liquidate additional RSPT funds and transfer the funds to a real estate title company located in McCall, Idaho, for the purpose of "purchasing a fixed-income bank note from Pacific Continental Bank."

31.  Neither Price, nor Interlake, nor any Participant participated in or agreed to Hutcheson's instructions.

32.  ASPire again forwarded these instructions to MG Trust, which implemented fifteen (15) more redemptions and transferred $3,001,000.00 to the title company on December 27, 2010.

33.  Hutcheson then used the $3,276,000.00 that had been released by MG Trust to purchase the PCB Note for the benefit of GVH.

34.  In connection with these transactions, Hutcheson created a promissory note and pledge agreement, whereby GVH (the entity owned or controlled by Hutcheson) promised to repay RSPT the full $3,276,000.00 plus interest, and secured the note with a pledge of the PCB Note assets (including the mortgage on the real property in Donnelly, Idaho).

35.  MG Trust never requested or reviewed any of the documents related to Hutcheson/GVH's purchase of the PCB Note.  Hutcheson did not provide the actual PCB Note or mortgage-related documents to MG Trust.

36. Hutcheson later caused GVH to borrow additional funds from William Fletcher, which were also secured by a pledge of the PCB Note assets. However, in Fletcher's case, he received the actual PCB Note and other documents — which had previously been pledged to RSPT, but never provided to MG Trust.

37. In total, then, the PCB Note transaction liquidated approximately forty-eight percent (48%) of RSPT's liquid assets and provided RSPT an interest in an illiquid promissory note from an entity owned or controlled by Hutcheson, which was pledged (and provided) to Fletcher.

38. The transaction between RSPT and GVH is a "prohibited transaction" as that term is defined by ERISA and the Internal Revenue Code (the "Code"). *See 29 U.S.C. §1106 and 26 U.S.C. §4975*.

39. MG Trust performed the transaction based solely on ASPire and/or Hutcheson's instructions.

40. MG Trust did not investigate the proposed transaction, or in any other way verify that the PCB Note was a valid plan asset.

41. MG Trust should have inquired or investigated the instructions to liquidate RSPT assets because (A) assets would be leaving MG Trust's custody; (B) the instructions were not from RSPT Participants; (C) the instructions transferred funds to accounts not managed by Interlake or Price; and (D) the instruction to transfer funds to accounts outside of MG Trust and Interlake were incompatible and inconsistent with the RSPT Plan Document and/or how RSPT had been historically administered.

42. MG Trust knew, or should have known, that the transfer of funds from RSPT to, or for the benefit of, Hutcheson and/or GVH was a prohibited transaction.

43. Hutcheson admitted that the transfer of funds from RSPT to GVH was a prohibited transaction on RSPT's 2010 Form 5500 as filed with the Internal Revenue Service in 2011.

44. In 2011, the United States Department of Labor began investigating Hutcheson for, among other things, improperly transferring the funds from RSPT to GVH.

45. In 2012, after determining that the transfer of funds from RSPT to GVH was a prohibited transaction, the Department of Labor sought to remove Hutcheson as trustee of RSPT. *See Case No. 1:12-cv-00236-EJL, United States District Court for the District of Idaho*.

46. The Department of Labor successfully removed Hutcheson as the trustee of RSPT, and Bryant was appointed as the new Independent Fiduciary. Bryant was also charged with attempting to recover the assets released to Hutcheson and/or pursuing any other claims available to RSPT.

47. Additionally, in April 2012, Hutcheson was indicted and charged with wire fraud (among other things) related to the transfer of funds from RSPT to GVH. *See Case No. 1:12-cr-00093-WFN, United States District Court for the District of Idaho*.

48. Hutcheson was tried in April 2013 for the criminal charges against him.

49. On or about April 15, 2013, a jury found Hutcheson guilty of wire fraud related to the transfer of funds from RSPT to GVH.

50. To date, no funds have been returned to Bryant or RSPT by Hutcheson, GVH or MG Trust.

51. The losses sustained by RSPT as a result of the transactions described above are clear and undisputed – $3,276,000.00 was transferred, and has not been returned.

## CLAIM ONE – BREACH OF ERISA FIDUCIARY DUTIES
### (Failure to Prudently and Loyally Manage RSPT's assets)

52. Bryant incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

53. As outlined above, MG Trust was a fiduciary of RSPT within the meaning outlined in 29 U.S.C. §1002(21)(A), with a duty to act in RSPT's best interests, protect RSPT's assets, and act in accordance with the fiduciary duties set forth in 29 U.S.C. §1104. Any provision of the MG Trust Agreement to the contrary incorrectly states MG Trust's actual functions with respect to RSPT.

54. Under ERISA, fiduciaries (such as MG Trust) who exercise discretionary authority or control over management of RSPT assets, or disposition of RSPT plan assets, are responsible for ensuring that investment options made available to RSPT participants are prudent. Furthermore, such fiduciaries are responsible for ensuring that RSPT assets are prudently invested and consistent with the purpose of RSPT. MG Trust is liable for losses incurred as a result of such investments being imprudent.

55. A fiduciary's duty of loyalty and prudence also requires it to disregard plan documents or directives that it knows or reasonably should know would lead to an imprudent result or would otherwise harm plan participants or beneficiaries. *See* 29 U.S.C. §1104(a)(1)(A) and (B). Thus, a fiduciary may not blindly follow plan documents or directives that would lead to an imprudent result or that would harm plan participants or beneficiaries. Nor may it allow others, including plan trustees, to do so.

56. Any provision of the MG Trust Agreement that attempts to absolve MG Trust from these basic fiduciary duties is void and against public policy.

57. MG Trust breached its duty to prudently and loyally hold or manage RSPT's assets. During December 2010, when the PCB Note transaction occurred, MG Trust knew, or should have known, that the loan of funds to GVH by RSPT for the purpose of GVH's purchase of the PCB Note was not a suitable or appropriate investment for RSPT. The GVH loan clearly did not serve RSPT's stated purpose, and was clearly too risky for retirement savings. Yet MG Trust failed to take any meaningful steps to investigate the proposed transaction. It did not refuse to participate (as Price/Interlake had) or otherwise protect the RSPT participants from the losses that MG Trust knew or should have known would ensue as a result of the prohibited transaction.

58. As a direct and proximate result of the breaches of fiduciary duties alleged herein, RSPT (and indirectly RSPT's participants and beneficiaries) lost nearly half of the liquid value of their retirement accounts.

59. Pursuant to 29 U.S.C. §1132(a)(2) and 29 U.S.C. §1109(a), MG Trust is liable to restore the RSPT losses caused by its breaches of fiduciary duties as alleged in this Claim.

### CLAIM TWO – BREACH OF ERISA FIDUCIARY DUTIES
### (Failure to Administer RSPT in Accordance with its Terms)

60. Bryant incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

61. At all relevant times, as alleged above, MG Trust was a fiduciary of RSPT and/or its ERISA retirement plans within the meaning of 29 U.S.C. §1002(21)(A).

62. At all relevant times, the scope of MG Trust's fiduciary responsibilities included the responsibility to administer the ERISA plans within RSPT in accordance with their terms within the meaning of 29 U.S.C. §1104(a)(1)(D).

63. The RSPT Plan Document and other documents and instruments through which the RSPT plans were administered in effect at all relevant times contained the following provisions, among others (unless otherwise indicated, section references are to the RSPT Plan Document):

  (a) Section 9.03 states that a separate account shall be maintained for each participant in an RSPT plan, to which each participant's share of contributions, earnings, losses and expenses are to be allocated.

  (b) RSPT has at all relevant times allowed Participants to direct the investment of their RSPT accounts (other than the portion of their accounts that is invested in qualifying employer securities or Participant loans) among five investment portfolios established and maintained by Interlake, as RSPT's investment manager.

  (c) Section 10.01(b) states that all contributions made to an RSPT Plan are made for the exclusive benefit of the Participants and their Beneficiaries, and such contributions shall not be used for, nor diverted to, purposes other than for the exclusive benefit of the Participants and their Beneficiaries.

  (d) Section 10.03(a) states that the Trustee may invest and reinvest the Trust Fund in a pool of Exchange Traded Funds, Mutual Funds or Collective Trust Funds that adhere to the Modern Portfolio Theory; and in no case shall the allocation of equities exceed 70% of plan assets, nor shall fixed income instruments exceed 40%.

  (e) Section 10.04(a) states that the powers granted the Trustee under Section 10.03 shall be exercised by the Trustee in its discretion insofar as such exercise does not contravene any written direction from the Investment Fiduciary.

  (f) Section 10.04(b) states that the Trustee shall not engage in any prohibited transaction within the meaning of the Internal Revenue Code and ERISA.

(g) Section 10.06(b)(2) states that the assets with respect to which a particular Investment Manager has been appointed shall be specified by the Investment Fiduciary and shall be segregated in a separate account for the Investment Manager (the "Separate Account"). It further states that the Investment Manager shall have the power to direct the Trustee in every aspect of the investment of the assets of the Separate Account.

64. MG Trust breached its fiduciary duty to administer the RSPT plans in accordance with their terms by, among other things, failing to confirm that Interlake, as RSPT's Investment Manager, had consented to the liquidations and transfers of RSPT assets as Hutcheson directed, as required by the RSPT Plan Document. Had MG Trust done so, it would have learned that Interlake had expressly withheld its consent to same and could have taken action to prevent such liquidations and transfers from ever happening. Instead, MG Trust blindly implemented Hutcheson's liquidation and transfer instructions with respect to nearly half of the assets under Interlake's management, without the knowledge or consent of Interlake.

65. MG Trust also breached its fiduciary duty to administer the RSPT plans in accordance with their terms by implementing Hutcheson's liquidation and transfer instructions without ever confirming or questioning whether such instructions were in furtherance of participants' investment directions under RSPT. Had MG Trust done so, it would have learned that Hutcheson was attempting to circumvent the RSPT's participant-directed investment policies and procedures to make an investment that not only had never been communicated to participants but also would have indicia of ownership in an entity not controlled by RSPT (i.e., GVH). MG Trust would have further had actual knowledge that GVH was an entity controlled by Hutcheson

and that any loan or transfer to GVH by RSPT would be a prohibited transaction under the Internal Revenue Code and ERISA, which was expressly prohibited under RSPT's Plan Document.

66. MG Trust also breached its fiduciary duty to administer the RSPT plans in accordance with their terms because MG Trust knew or should have known that RSPT's loan to GVH was a prohibited transaction, and that Hutcheson and/or ASPire were investing the RSPT assets in risky and illiquid assets that did not comport with RSPT's purpose. Despite this knowledge, MG Trust failed to take action to protect RSPT or its participants from the consequences of Hutcheson and/or ASPire's failures.

67. MG Trust also breached its fiduciary duty to administer the RSPT plans in accordance with their terms because, despite numerous red flags indicating a departure from customary RSPT policies, procedures, and provisions, it took no action to determine whether the investment Hutcheson wanted to make was allowed under RSPT's plan documents. In fact, the investment in the PCB Note was not "a pool of Exchange Traded Funds, Mutual Funds or Collective Trust Funds that adhere to the Modern Portfolio Theory" and was therefore not allowed under RSPT.

68. MG Trust is jointly and severally liable as a co-fiduciary under 29 U.S.C. §1105(a) because it knowingly participated in Hutcheson and/or ASPire's fiduciary breaches, it enabled Hutcheson and/or ASPire's breaches of their fiduciary duties, and it failed to make any effort to prevent or remedy the breach, despite having knowledge (or constructive knowledge) of the breaches or potential breaches.

69. As a direct and proximate result of the breaches of fiduciary duties alleged herein, RSPT (and indirectly the RSPT participants) lost a significant portion of their retirement investments.

70. Pursuant to 29 U.S.C. §1132(a)(2) and 29 U.S.C. §1109(a), MG Trust is liable to restore the losses to RSPT caused by its breaches of fiduciary duties as alleged in this Claim.

## REMEDY FOR BREACHES OF FIDUCIARY DUTY

71. As noted above, as a consequence of MG Trust's breaches, RSPT suffered significant losses.

72. 29 U.S.C. § 1132(a)(2) authorizes a fiduciary to bring a civil action for appropriate relief under 29 U.S.C. § 1109 (ERISA Section 409). Section 409 requires "any person who is a fiduciary . . . who breaches any of the . . . duties imposed upon fiduciaries . . . to make good to such plan any losses to the plan . . ." Section 409 also authorizes "such other equitable or remedial relief as the court may deem appropriate . . ."

73. With respect to calculation of the losses to a plan, breaches of fiduciary duty result in a presumption that, but for the breaches of fiduciary duty, the participants and beneficiaries in RSPT would not have made or maintained its investments in the challenged investment and, where alternative investments were available, that the investments made or maintained in the challenged investment would have instead been made in the most profitable alternative investment available. In this way, the remedy restores the values of RSPT's assets to what they would have been if RSPT's assets had been properly administered and held.

74. Bryant and RSPT are therefore entitled to relief from MG Trust in the form of: (1) a monetary payment to RSPT to make good to RSPT the losses to RSPT resulting from the breaches of fiduciary duties alleged above in an amount to be proven at trial based on the principles described above, as provided by ERISA § 409(a), 29 U.S.C. § 1109(a); (2) injunctive and other appropriate equitable relief to remedy the breaches alleged above, as provided by ERISA §§ 409(a)

and 502(a)(2), 29 U.S.C. §§ 1109(a) and 1132(a)(2); (3) reasonable attorney fees and expenses, as provided by ERISA § 502(g), 29 U.S.C. § 1132(g), the common fund doctrine, and other applicable law; (4) taxable costs and (5) interests on these amounts, as provided by law; and (6) such other legal or equitable relief as may be just and proper.

### CLAIM THREE – Professional Negligence

75. Bryant incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

76. MG Trust owed a duty of care to RSPT to adequately safeguard and protect the RSPT assets.

77. MG Trust breached the standard of care required of ERISA and non-ERISA custodians and directed trustees and acted with conscious indifference to a risk of loss, which thereby caused RSPT to lose approximately $3,276,000.00 in assets and property.

78. MG Trust is liable to RSPT for the damages caused as a result of MG Trust's negligent breach of the standard of care required.

### CLAIM FOUR – State law breach of fiduciary duty claim

79. Bryant incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

80. MG Trust was a fiduciary of RSPT and its participants under Idaho (and other state) laws, with a duty to act in RSPT's best interests, to protect RSPT's assets, and otherwise to protect the interests of RSPT and its participants as fiduciaries are required to act under Idaho (and other state) laws.

COMPLAINT AND DEMAND FOR JURY TRIAL – PAGE 15
A♦J; Matter: 8571-013

81. MG Trust breached its fiduciary duties to RSPT and its participants by directing and paying funds related to the PCB Note transaction, with no investigation as to the proposed use of the funds and no effort to ascertain whether the funds were being used by Hutcheson in a prohibited transaction.

82. As a direct result of MG Trust's fiduciary breaches, RSPT lost nearly 50% of its liquid assets and has been unable to recover the losses incurred.

### CLAIM FIVE – ATTORNEY FEES AND COSTS

83. Bryant incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

84. Bryant has been required to retain the services of ANGSTMAN JOHNSON to prosecute this matter on her and/or RSPT's behalf, and Bryant is entitled to reasonable attorney's fees for prosecution of this action, pursuant to applicable law, including, but not limited to, 29 U.S.C. §1132(g) and Rule 54 of the Federal Rules of Civil Procedure.

### RESERVATION OF CLAIMS

Bryant has completed its initial investigation in this matter, but has not yet undertaken discovery. Bryant therefore expressly reserves her right, and gives the Defendant notice, that Bryant may amend her complaint to state all other necessary claims and causes of action that come to light during the course of discovery in this matter. Bryant also specifically reserves the right to amend this Complaint to assert a claim for punitive damages, should discovery reveal facts or information that supports such a claim.

## JURY DEMAND

Bryant hereby demands a trial by jury on all issues and claims so triable in this matter.

## PRAYER FOR RELIEF

WHEREFORE, Bryant prays for judgment from the Court against MG Trust as follows:

1. Actual monetary damages in the amount of any losses RSPT suffered, with such losses to be allocated among the participants' individual accounts in proportion to the accounts' losses (and subject to RSPT's early withdrawal procedures);

2. Costs pursuant to 29 U.S.C. §1132(g);

3. Attorney's fees pursuant to 29 U.S.C. §1132(g), the common fund doctrine, and any other applicable statute or rule. In the event of judgment by default, Bryant asserts that a reasonable attorney fee is one-third (1/3) of the judgment amount.

4. For such other and further relief as the Court deems just and equitable in the circumstances.

DATED this 30th day of December, 2016.

            /s/ Matt Christensen
            MATTHEW T. CHRISTENSEN
            Attorney for Plaintiff